If it pleases the court, Jocelyn Lazar for the Gerasi Law Firm, Representative Callum Carolyn Lazar, I would respectfully request to leave five minutes of the panel's time for rebuttal, or if the court terminates its questions, which is probably unlikely before then. This case is 27 years in the making. The seeds were sown back in 1990 when the Uniform Probate Commission took what it deemed a rash little step by deciding to expand the revocation of spouses and wills to non-probate assets. Almost immediately the exercise held that it could not be constitutionally applied to a contract signed before the statute, and a statute there which was nearly identical to the model statute 2804. And since then, the stakes have been courts. Four of them have been split, two holding it not in Constitution 1, the contract's clause to only Constitution 1. As your honor knows, there is a split in the surface. How do you use the test of your opinion? So, yes, obviously if you have to choose sides, you're going to split. To me, the question I'd like you to address is the cases seem to turn on whether or not there is a vested right, some sort of property right that's being taken today by the ROT statutes. That's a question of state law, isn't it? Well, if I may answer the first part of your question first, because there's only one part. The part was, is the question whether or not property right exists is a question of state law. Generally, your honor, but insofar as it impacts standing, it brings in a third-party standing. By the way, I'm not interested in the standing policy on this question. My personal view is that you're quite insane when you get to the merits. My question is, if this does turn on whether or not your client had a vested property right, how do we determine whether or not he has such a right? Your honor, I respectfully would like to modify. Really, you have to answer my question first. Don't we determine what your client's rights were with respect to this IRA by reference to the state law? Your honor, her ex-husband had property rights contract rights as well. Right, and you're not representing him. Your honor, I believe we have third-party standing, and numerous courts have upheld the third-party standing, including Whirlpool, until a case is decided by the other side. Third-party standing has been upheld, and even in cases which rule, I'm assuming you have independent standing. You're not here on behalf of these estates. These estates separately represent. But, your honor, we can't assert the rights of Tom Spahnke on third-party standing that's been upheld in Whirlpool and two other cases cited by the estate. In fact, the Whirlpool decision was based on the rights of the ex-spouse. I know you want to take me on a fraudulent contetour. I still want to ask you the question. Whatever property rights are issued, let's assume you're talking about those which property rights were issued, are they or are they not determined by state law? Not with respect to the rights under the IRA. That's a federal law question. So, your view is that determining whether or not she had a right to collect under the IRA is governed by federal law? I believe yes, sir, and it preempts it. Federal law governs it. Well, I'm glad you asked that. I can't answer that. Well, you have to start with the statute, and the statute is 26408A, and says that the IRA account is created for the exclusive benefit of the individual and the beneficiary. But how do we determine who the beneficiary is? Is there any federal law that tells us how we determine who the beneficiary is? Absolutely, and it will take me five or six minutes to go through it. No, you don't have five or six minutes to go through it. I don't have five or six minutes to answer this question. Well, tell me what statute tells me how I determine who the beneficiary is. There are regulations both under the IRA code, which are cited in our brief, and under ERISA, which has a specific law. I'm glad they're all the ones you cite in your brief. I don't find anything in federal law that says that the person first listed as a beneficiary remains such, even though state law may say that the beneficiary is changed by operation of law. Is there anything in federal law which meets the question that you're posing to me? All of the things that say the beneficiary gets the IRA, my question is, is there anything? And do you make available any of those? This is not a hostile question. I'm asking a different question. Is there anything in federal law that directly addresses the question for us to do? I think it's been addressed by all the Supreme Court cases, because what they say is if the federal law and regulations say that we are going to honor the intent of the donor or spouse, whether it's insurance policy, federal insurance policy, benefit program, under that program, and Hillman was the last nail in the coffin, it says we are going to honor that and that person gets the benefits, and I believe it was Justice Thomas Hillman who says, if you are distributed the benefits, that means you get to keep on them, and there's a straight line of cases where they all deal with the applicable federal statutes and regulations, and there are a circle of regulations. And you're saying, oh, IRAs are developed, but they're grown, and state law is not developed at all. No, Your Honor, what I'm saying is that the regulations under the IRA and those which have been adopted from the distribution rules from HRSA, which carry with them HRSA's definition of the beneficiary under 2910028, which has specifically been adopted for IRAs as evidenced in the publications 598 and 590B, and that tells you who is entitled to the money. It says right there, a beneficiary designated under the plan is one who is entitled to the benefits. It couldn't be clearer, and I'll be happy to give fortifications to that. Yeah, you're right. I just thought I still need an answer to my question. Do any of these regulations confront the kind of situation we have here where by operation of state law, the beneficiary changes? In other words, Your Honor, that was addressed directly in Edelhoff. The argument was raised in his dissent by Justice Breyer, and it was addressed in a footnote by Justice Thomas in Edelhoff. And what Justice Thomas said is, there is no statute written, especially HRSA statute, which was written 16 years before the first ROD law was ever even brought up in 1990. There is no statute which Congress can write which can come up with hypotheticals to address anything which is going to happen in the future or any possible situation. So the statutes are drafted based on the understanding of the law at the time. No one thought that there would be this kind of interference in state law. There is nothing in the regulations which allow for it. And are they? We're dealing in Edelhoff with his arrest warrant. And there is just as much preemption from the regulations which have the HRSA statute in the hiring law. And so what does the CST say for that? The conflict preemption law says, well, it's a Supreme Court law that says there's a written law that preempts all contrary to state law, correct? And it's also been adjudicated to override it by conflict preemption. You don't need, remember, under Banks, you don't need the preemption clause. And under general unfortuitous burdens, including Hillman, which disposed of the preemption clause. He said, we're going to decide this by conflict preemption. You do not need a preemption clause to rule that a state law which interferes is overridden by state law preemption. And the conflict here is stark and simple. Under the plan, which says you have to pay the last designated beneficiary on file, you know, fully acceptable to the custodian. And that plan cannot be amended without the Secretary's approval. We may have finished up. Actually, I'm sorry. I'm sorry. I'm sorry. I'm sorry. I'm sorry. I'm sorry. I'm sorry. I'm sorry. I'm sorry. I'm sorry. But, Mike, you know, I'm not hostile because I'm trying to understand your position. So is it your position in this case that it really doesn't matter whether or not you can meet the burden imposed by California? So if we were to choose the California statute, you'd be entitled to show that notwithstanding the statute, it was the real intention of the decedent to leave the money to your client. Your position is, I don't even have to meet that burden, right? That's correct. It doesn't matter which state law we choose to be applicable because your view is that no state law is applicable. Excessive law questions have come up in collateral issues, but not on the issue of the ownership of the IRA. It's overridden. No, I'm talking about the issue of who the money goes to. Your view is that the choice of law issue is irrelevant because no state law can be applicable to this. You can't interfere with the pre-distribution phase, which is what all these cases say. No, I understand. And really, I'm not trying to be hostile. I want to understand your position because a lot of the brief is devoted to choice of law, and your view is that it doesn't matter. It doesn't matter if it's a pre-distribution because it's a financial question. So your argument with respect to the contract clause is that the contract that Mr. Luthar entered into with the IRA company is being impaired, and that no state law can change that. No state law can retroactively impair the rights of either Mr. Vonky as the signer of the IRA or Mr. Johnson's third-party beneficiary. I'm at four minutes. May I reserve? You may serve. Thank you. One of your honors, may I please report T.J. Ryan on behalf of Mark Kronk in his capacity as the personal representative of the estate of George Thomas Kronk. I think some framework is necessary to assist the court in this question. In 2008, Mr. Kronk divorced his wife, Carol Luthar, and in doing so, availed themselves of Arizona law. And when they did that, Arizona law, Arizona's revocation of non-divorce statute, did two things. It revoked his then-revocable beneficiary designation that was then in favor of his ex-spouse, and it also, on Luthar's side, she disclaimed her interest in the IRA account. So it operates two ways. Well, but I understand what the law does. What your opponent says is that law can't override federal law, which says that the estate law can't take away a beneficiary designation. I think that's a fair summary, at least part of what he said. So respond to that for me. Absolutely, your honors. And he's correct in general. And there are multiple types of preemption, as the court's well aware. Express preemption and conflict preemption are the two types of preemption that he has already arrested. But we're dealing with express preemption. That's absolutely correct. And I think one of the pieces of this that has to be understood is in the regulations, the federal regulations that apply to ERISA, which support the Department of Labor statutes, not tax statutes, but Department of Labor statutes, specifically exempt IRAs from the application of Title I. The express preemption statute is contained in Title I of ERISA. And in fact, in the appellate zone, he briefly admits that ERISA does not apply. What he tries to do is shoehorn ERISA through the back door of the 401A9 regulations. And the 401A9 regulations do one thing and one thing only. And that is explain what rubric an individual beneficiary or an individual account holder of a retirement account, whether it's an ERISA account or an individual retirement arrangement, how fast they must withdraw the assets that they've been allowed to defer taxation on. That's it. Let me ask a question of your colleague here. I know there's lots of law out there to circuit decisions about this contract expunge issue. But is there any law about this preemption issue? With respect to IRAs, with respect to risk to contracts, I know he's arguing from analogy. But I'm trying to find out if there's a case anywhere that says that the IRA regulations preempts any law with respect to the definition of beneficiary. The IRA regulations preempt state law? No. There's something in the inverse in the 9th Circuit's decision in DeBerco which says that, very clearly, IRA beneficiary designations are not controlled by the ERISA regulations. And it cites to that Department of Labor regulation that exempts IRAs. It's used there for a different purpose. That's exactly correct. You brought up a good point earlier, which is that IRAs are a function of state law. In fact, 408A says that they are a trust. And a trust is an element, an animal of state law. So it is an animal of state law. State law controls its disposition. And that's the outcome here, is that probably state law controls the disposition of its citizens. In my view, Your Honor, it's very simple. Tom Crock was a decedent in Arizona. Arizona controls the disposition of assassins. Is the case was brought in Arizona? It was brought in California. It was brought in Arizona. So the district judge, in seeing a diversity, was supposed to apply Arizona law? That's correct. Was he signed officially in Arizona? I believe he was actually signed in Colorado. But at the time of his death in 2012, he was a domiciliary of Arizona. And in fact, A domiciliary of Arizona, when he signed it, or when he was here in Colorado? I don't believe that he was domiciled in Arizona when he signed it. In fact, if we assume for the moment that federal law does not apply and we're choosing between Arizona law and California law, not even if we choose California law, because Tom Crock died as president of Arizona, California law defers to Arizona. But as Judge Reyes identified, in what I think is a very well-organized, well-reasoned opinion, somewhat of a roadmap for this court to follow, potentially, is that Arizona law says, hang on a minute, if we're choosing state law to apply, we're going to examine the chosen state law, and if it conflicts, we're going to keep it here in Arizona. And there's a specific statute, 14... 2703. And there's a specific Arizona statute that deals with the reputation of divorce. Correct. As a state policy, if you will. Absolutely. As identified in the other statute. Absolutely. But don't we still have the question that Arizona statute, under the contracts clause, take away vested rights from... I was thinking of this house, and I guess your opponent thinks that it's taking away vested rights from... Mr. Clark. Tom, do you... So the voting paper, how do we focus on what we look at about vested rights, in particular? Well, it depends on the question. And the question here, the original argument was that it took away her vested rights, Czar's vested rights. But as the stream of cases that have come down in the wake of the Whirlpool case, being distinguished from Whirlpool, including Stillman, all of his progeny, out of the Tenth Circuit, they've all explained that there is nothing more than a contingent expectancy. And if we look at the facts of this case, the question is, what could have Tom Crock done in order to avoid the effects of the statute? He had multiple options to avoid the effects of the statute. Number one, in the divorce decree, he could have indicated that the beneficiary designation in favor of Lazar would remain. Number two, he could have re-designated Lazar after the fact. At any time, correct? The trial court's order that dissolved their marriage and terminated their joint property rights could have dealt with this issue. Frankly, they could have remarried. That would have also trumped the statute as well. So in terms of an exercise of legislative expression, it didn't affect in any way Crock's ability to change his contract or handle this hierarchy. Right. I suppose they're affected in the sense that you better do this before you die. Correct. I've read the divorce decree or the dissolution decree in the settlement. It's fair to say there's nothing you can hear about this, is that right? No. You're teasing intentions, but it's not directly the minister's. Not at all. And in fact, that's exactly what the statute is intended to address, which is inattentiveness far cry from the express intention that is required even if we assume that California law were to apply. And I would even posit that on the basis of the proceedings, the case could be upheld in the California law analysis because the allegations do not need to be expressed in an expression of intent. But the question you asked was... I have a question. I asked about the divorce papers. Thank you. And you and I agreed that there's nothing that would directly influence this. I think you were about to tell me how I should interpret  In fact, I can make your argument for you. No, no. The divorce decree, Your Honor, actually does address and it split the IRA. What it did not do was address the beneficiary disposition. So she got ownership of him, right? Correct. But in that same divorce decree, in that same property settlement decree, they both mutually weighed the interest in any of the other's assets. And again, as the revocation of the divorce statute operates, as far was treated as having disclaimed rights, it sort of falls in lockstep. Excuse me, the question I was trying to focus on before, which is that the divorce decree may have done away with her interest in any of his assets. The question is whether she had an enforcement property interest in Her assets? Yeah, in the designation of herself as a beneficiary. Well, that is based on the predicate that an individual is freely changeable by the contract owner. Cronk is the contract owner. If they have any property rights and the uniform analysis has been, no. Whirlpool has been criticized over and over and over again. I want to touch on one point. Mr. Lazar indicated that the law analyzing Whirlpool was substantially similar to 2804, which is based on the uniform probate code. That is not true. And if you analyze the language of the statute as it exists in Whirlpool, that was an incredibly expansive statute that went so far as to say that all elements of the contract are revoked. Not the beneficiary designation, but the contract itself. And there's another distinguishing factor that I think is important in Whirlpool. That was the life insurance case. And as Whirlpool discussed, they went on and on about how life insurance has one purpose, to provide assets to the beneficiary. And using that as force to uphold the beneficiary designation, even in light of the revocation of the force statute, they found that persuasive. This is not their case. This is IRA. And I think it's universally understood that an individual retirement account is not an estate planning tool. It's a retirement vehicle. It's a way to defer your otherwise taxable income so that you can use it later when, arguably, your taxable income is lower. Let me return to Whirlpool for a second. What struck me about both the Eighth Circuit and Fifth Circuit cases is they seem to look back at the same law to figure out what the property entry score was of the beneficiary. I can't say the Eighth Circuit was wrong about Arkansas Law. They know Arkansas Law better than I do. So my question is, are the cases conflicting in that sense or did they just come to different conclusions about what state law provides? Well, if we're analyzing this case under Arizona State Law, Arizona has been clear in its expression in the Dover case that there is no vested right. So while, at the time that they divorced in 2008, the Dover case explains that there was no vested right and, therefore, there was no contractual parameter. The District Court, initially, in California, and, to some extent, Judge Reyes adopted this and,  Judge Reyes was looking for a bill under the merits and found it upstanding here. Truly, the case was already standing to assert her own entitlement to this. That's an interesting question, Your Honor, because I think, in some ways, the contractual rights and the standing analysis are very contradictory. I don't think the client was ready to do it. Well, she may fail on the merits and they may not, but she may understand. Well, Your Honor, selfishly, I think if you say there's no standing, you've been doing this for now  So, in analyzing the case, Your Honor, I think it's important to understand that Arizona's Replication of Divorce Statute did not affect any of Tom Croft's contractual rights. He had the ability any time to redesignate Mrs. Hart, if that was his express intent, but that's not what the statute is aimed at. The statute as explained in Dobert and Lambarella is aimed at ejection, supplementing and making an assumption admittedly it is an assumption, but supplementing what occurs when two parties get divorced, and supplementing that order if the judge enters. And, again, California property law will kick these two back to Arizona. Again, I want to reiterate that ERISA does apply here, and my opponents made that. None of those cases really meet the question on the merits, and ultimately the disposition of the assets are subject to state law. The IRA regulations, I believe I made this point earlier, it's important to understand where in the code these regulations fall. The IRA regulations, both 401A and its reference to 401A-9, are tax regulations. Correct. That's absolutely correct, Your Honor. It's a deferral taxation, but what they say is if we're going to allow you to defer your taxation on these assets, we're going to require that you pull them out so that they are subject to tax on a schedule that we set. Now, as the 401A-9 regs also say, they contemplate the application of state law. Because this is a state law, state law will apply in terms of identifying who may be beneficiary. I want to make one last point, which is that the use of the term designated beneficiary, the trial court identified that as a term of art. I think it's absolutely correct that the use of the term designated  is a term       briefly on the commerce clause, because of some of the argument I heard. We haven't touched on that today. I agree with the point made by another state, which Arizona is trying to reach across its state borders and drastically change the terms. Forbid the payment of permanent commerce clause. Exactly. And the test under extraterritorial commerce clause section, unlike other sections of the commerce clause, where you have to weigh the local interest, as the court knows from its opinion in San Francisco, it's a strict kind of liability standard. Once you cross the state borders in order for the commerce clause to survive, you have reached beyond your ability to control another state's law. So I think we've clearly stated here, commerce clause claim was  in California. Arizona is attempting to change the beneficiary. It's attempting to insert a provision, which you can't even get by federal law without amendment. And the provision would be that divorce revokes the stated beneficiary. You can revoke the plan terms, which again, Your Honor, I can't emphasize this. Tom Crock had seven days under federal regulations to look at those, to decide whether he wanted to opt out. The Secretary enacted these so that the person with the plan would be informed of the provisions that act on them. And we don't know that Tom Crock even knew of the Arizona law, but we do know that he had a federal right to act on what was in front of him. But the commerce clause would require an article 3 standing application of this contact at all. And Judge McCormack  case against the other which defeats commerce clause saying if that was the case, the local state interest would have defeated the commerce clause claim and the Supreme Court case would have defeated it. And the Supreme Court case  commerce clause saying if that was the case, the Supreme Court case the Supreme Court case saying if that was the case, the Supreme Court  would have defeated it.
judges: Siler, Tashima, Hurwitz